PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                      No. 11-4724

RICHARD W. POWELL, JR.,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(1:10-cr-00007)

Argued: March 22, 2012

Decided: May 16, 2012

Before SHEDD, KEENAN, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Shedd and Judge Keenan joined.

## COUNSEL

**ARGUED:** Edward Ryan Kennedy, ROBINSON & MCELWEE, Clarksburg, West Virginia, for Appellant. Andrew R. Cogar, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** William J. Ihlenfeld, II, United States Attorney, Wheeling, West Virginia, for Appellee.

**OPINION**

FLOYD, Circuit Judge:

Appellant Richard Powell appeals his conviction and sentence for making, or aiding and abetting the making of, a false entry in a bankruptcy-related document, in violation of 18 U.S.C. §§ 2, 1519. He contends that the district court erred in failing to provide several requested jury charges, the prosecutor committed reversible misconduct, defense counsel provided ineffective assistance, and the district court improperly refused to apply a mitigating role adjustment in sentencing. Finding these arguments to be either without merit or noncognizable, we affirm.

I.

A.

On January 5, 2010, the grand jury indicted Powell on one count of a fifteen-count indictment for making, or aiding and abetting his co-defendant, Michael Pavlock, in making, a false entry in a bankruptcy-related document, in violation of 18 U.S.C. §§ 2, 1519. The indictment charged Pavlock with twelve counts of wire fraud and three counts of making, or aiding and abetting the making of, a false entry in a bankruptcy-related document.

The charges arose from a fraudulent scheme directed by Pavlock. Under this scheme, Pavlock established companies and maintained control over them by installing his associates as their nominal heads. He then convinced individuals to invest in the companies through loans that he represented would be repaid with interest. But these companies in fact had no legitimate business activity, and he misappropriated the invested funds for personal use. Relevant to the present appeal, Pavlock installed Powell as the managing member of

one such company, Fayette Investment Acquisitions, LLC (FIA).

Golden Investment Acquisitions, LLC (GIA), although nominally owned and managed by Craig Golden, was also under Pavlock's control. On March 31, 2006, at Pavlock's direction, GIA signed a contract of sale to purchase the assets of a limousine service, including a number of limousines (the Gratz limousines), from Charles and Trudy Gratz for $175,000. But the Gratzes did not sign title to the limousines to GIA at that time.

Instead, in December 2006, Powell met with the Gratzes' accountant, Wallace McCarrell, in McCarrell's office in Washington, Pennsylvania. Powell represented that he had authority to receive the limousines on behalf of FIA. Without questioning Powell's authority or FIA's entitlement, McCarrell signed the titles of the limousines to FIA—not GIA—and delivered the vehicles to Powell. Although Charles Gratz was not present, McCarrell signed Mr. Gratz's name to the certificates of title and notarized the signatures. There is no evidence, however, that Powell or FIA paid for these vehicles at any time, and Golden later testified that GIA never transferred ownership to FIA.

By June 2007, GIA was severely over-leveraged, and Pavlock directed his associate, Stephen Graham, to put GIA into Chapter 11 bankruptcy. As a result, without Golden's knowledge or consent, Graham filed a Chapter 11 bankruptcy petition and schedules for GIA. Thomas Fluharty was appointed as GIA's bankruptcy trustee. GIA's bankruptcy schedules failed to reflect its acquisition or ownership of the Gratz limousines, so Fluharty initially was unaware that GIA had purchased the vehicles.

Pavlock then directed Powell to contact Fluharty to open negotiations for the purchase of GIA's assets by FIA. Fluharty ultimately agreed to the sale, but the deal fell through in May

2008 after several checks Powell sent to complete the purchase bounced. Powell and Fluharty did not discuss the Gratz limousines during these negotiations.

Fluharty first learned of the transaction involving the Gratz limousines when Charles Gratz's attorney contacted him in summer 2008. Fluharty then began to investigate whether the limousines were the subject of a fraudulent transfer. Thereafter, in a letter dated January 29, 2009, Powell wrote Fluharty regarding the Gratz limousines. Although the January 29 letter had been drafted by FIA's in-house counsel, Kevin Clancy, based on information provided by Pavlock, Powell reviewed and signed it. The letter contained two allegedly false statements. First, Powell claimed that Pavlock and Graham, through FIA and another of Pavlock's companies, "loaned over $500,000 to GIA to fund acquisitions including the Gratz Limousine Service." Second, he stated, "With the exception of . . . two Lincoln limousines, all of the physical assets of Mr. Gratz's limousine service[,] approximately twelve aged and nonserviceable limousines and other vehicles[,] were transferred to the ownership of [FIA] on December 12, 2006." These statements form the basis of the charge against him.

## B.

This case proceeded to trial before a jury in December 2010. During both opening and closing arguments, the prosecutor made certain references to Powell and Pavlock as "liars," and although Powell did not object at the time these statements were made, he now argues that they amount to reversible misconduct. At the close of evidence, Powell requested several jury instructions, three of which are relevant here. First, he asked that in instructing on the elements of an offense under 18 U.S.C. § 1519, the district court inform the jury that the government was required to prove the materiality of the false statement. Second, he sought an instruction on an advice-of-counsel defense. Finally, he asked the district judge

to direct the jury that the statement in the January 29 letter regarding FIA's ownership of the Gratz limousines was true as a matter of law based on the signed, notarized certificates of title. The judge declined to give each instruction. The jury subsequently found Powell guilty of the charged offense.

At sentencing, Powell argued that he was a minimal or minor participant in the offense and therefore was entitled to a reduction in his base offense level pursuant to U.S.S.G. § 3B1.2. The district court rejected this contention and calculated a total offense level of 14. The district court then sentenced Powell to 15 months' imprisonment, the low end of the applicable Guidelines range.

## II.

## A.

Powell first argues the district court erred in denying his requested jury instructions. Typically, we review a district court's decision regarding whether to give a jury instruction for abuse of discretion. *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010). But "[w]e consider *de novo* whether a district court has properly instructed a jury on the statutory elements of an offense." *United States v. Ellis*, 121 F.3d 908, 923 (4th Cir. 1997).

## 1.

Section 1519 of Title 18 of the United States Code establishes criminal penalties for any person who "knowingly . . . makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of . . . any case filed under title 11."[1] 18 U.S.C. § 1519. Powell asserts that, to

---

[1]Section 1519 provides, in full, the following:

obtain a conviction under this provision, the government must prove that the false entry was material, meaning that it had "a natural tendency to influence, or [was] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Wells*, 519 U.S. 482, 489 (1997) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)) (internal quotation marks omitted). Thus, he claims the district court erred in failing to instruct the jury that materiality was an element of the offense.

When interpreting a statutory provision, "we 'first and foremost strive to implement congressional intent by examining the plain language of the statute.'" *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (quoting *United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009)). "[T]his first cardinal canon of construction" requires us to "presume that a legislature says in a statute what it means and means in a statute what it says there." *United States v. Pressley*, 359 F.3d 347, 349 (4th Cir. 2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)) (internal quotation marks omitted). Thus, absent an indication from Congress of a contrary intention, we give statutory terms "their ordinary, contemporary, common meaning." *Abdelshafi*, 592 F.3d at 607 (quoting *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009)) (internal quotation marks omitted). If,

---

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519. Only that portion relating to the making of a false entry in a bankruptcy case is at issue here; our analysis with respect to the non-existence of a materiality element, however, applies with equal force to all parts of the statute.

after doing so, "the words of a statute are unambiguous . . . this first canon is also the last: judicial inquiry is complete." *Pressley*, 359 F.3d at 349 (omission in original) (quoting *Conn. Nat'l Bank*, 503 U.S. at 254) (internal quotation marks omitted).

A plain reading of the pertinent language of § 1519 requires the government to prove the following elements: (1) the defendant made a false entry in a record, document, or tangible object; (2) the defendant did so knowingly; and (3) the defendant intended to impede, obstruct, or influence the investigation or proper administration of a case filed under Title 11 (i.e., a bankruptcy action). *See* 18 U.S.C. § 1519. Because "[n]owhere does it further say that a material fact must be the subject of the false statement or so much as mention materiality," a "natural reading of the full text" demonstrates that "materiality would not be an element of" § 1519. *Wells*, 519 U.S. at 490 (finding that materiality is not an element of an offense under 18 U.S.C. § 1014, which criminalizes knowingly making a false statement to a federally insured bank for the purpose of influencing a loan application).

Our interpretation accords with those of our sister circuits, which, when construing § 1519, have omitted a materiality requirement.[2] The Eleventh Circuit has stated that § 1519 "rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with intent to impede or influence a federal investigation."

---

[2]We do not read the Second Circuit's decision in *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303 (2d Cir. 2009) (per curiam), to support the imposition of a materiality element. *Ionia* involved whether a constructive amendment to the indictment had occurred when the district court failed to instruct the jury that it had to find a material falsification. *See id.* at 306, 310. The Second Circuit resolved the issue by finding that any error did not affect the defendant's substantial rights and, in any event, was likely invited. *See id.* at 310. The court did not consider whether, where materiality is not alleged in the indictment, § 1519 imposes a materiality requirement. Thus, that case is inapposite.

*United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008)**.** Likewise, the Eighth Circuit has approved a jury instruction on § 1519 that imposed no materiality element. *See United States v. Yielding*, 657 F.3d 688, 710–12 (8th Cir. 2011).

Accordingly, we hold that the government need not prove the materiality of the falsification for an offense under 18 U.S.C. § 1519 and that the district court did not err in failing to instruct the jury on such an element.

2.

Powell next avers that the district court abused its discretion in failing to instruct the jury on the advice-of-counsel defense. A district court errs in refusing to give a jury instruction regarding a defense only if the instruction is both an accurate statement of the law and "has an evidentiary foundation." *United States v. Sloley*, 19 F.3d 149, 153 (4th Cir. 1994); *see also United States v. Gray*, 47 F.3d 1359, 1369 (4th Cir. 1995). In general, we "defer to a district court's decision to withhold a defense . . . in a proposed jury instruction" in light of that court's "superior position . . . to evaluate evidence and formulate the jury instruction." *Gray*, 47 F.3d at 1368.

A defendant may use his reliance on the legal advice of counsel "to refute the government's proof that [he] intended to commit the offense." *United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981). To be entitled to this defense, the defendant must establish "(a) full disclosure of all pertinent facts to an [attorney], and (b) good faith reliance on the [attorney's] advice." *United States v. Butler*, 211 F.3d 826, 833 (4th Cir. 2000) (quoting *Miller*, 658 F.2d at 237) (internal quotation marks omitted).

Finding that Powell failed to establish an evidentiary foundation, the district court declined to instruct the jury on this defense. Specifically, the court observed that the evidence in

the record showed that FIA's counsel, Clancy, relying on information Pavlock provided, prepared the letter for Powell's signature, but that no evidence indicated that Powell disclosed facts, pertinent or otherwise, to Clancy. The district court further adverted to Clancy's unrefuted testimony that he acted only as a scrivener and did not provide legal advice when drafting the letter. Because of the dearth of evidence supporting the application of the advice-of-counsel defense, the district court denied the requested instruction.

Having reviewed the record, we agree that the evidence did not support such a defense. Powell failed to provide evidence from which a reasonable jury might find that Clancy served as more than a mere drafter in preparing the letter or that Powell acted in good faith on Clancy's legal advice. Accordingly, we find no abuse of discretion.

3.

Likewise, we find no abuse of discretion in the district court's refusal to instruct the jury that Powell's statement that FIA acquired ownership of the Gratz limousines was true as a matter of law. The parties agree that, because the title transfers occurred in Pennsylvania, Pennsylvania law controls the issue of ownership of the vehicles. Powell contends that, under this law, the signed certificates of title established that FIA became the vehicles' owner as reported in the January 29 letter.

Pennsylvania law provides:

> In the event of the sale or transfer of the ownership of a vehicle within this Commonwealth, the owner shall execute an assignment and warranty of title to the transferee in the space provided on the certificate or as the department prescribes, sworn to before a notary public . . . and deliver the certificate to the transferee at the time of the delivery of the vehicle.

75 Pa. Cons. Stat. § 1111(a). Pennsylvania courts have clari-fied, however, that "a certificate of title is merely evidence of ownership . . . and is not conclusive." *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 61 (Pa. Super. Ct. 1967); *see, e.g.*, *In re Estate of Summers*, 226 A.2d 197, 199 (Pa. 1967). And "[w]here a certificate of title to an automobile is fraudulently procured by false information it is void ab initio." *Pa. State Police v. Bradley*, 297 A.2d 554, 556 (Pa. Commw. Ct. 1972) (alteration in original) (quoting *Hertz Corp. v. Hardy*, 178 A.2d 833, 838 (Pa. Super. Ct. 1962)) (internal quotation marks omitted).

As the district court explained in declining to provide the jury instruction and, more thoroughly, in denying Powell's motions for judgment of acquittal and for a new trial, there was sufficient evidence from which a reasonable jury could conclude that Powell obtained title to the limousines on behalf of FIA by fraud or theft by deception, so the titles did not, in fact, establish ownership. Specifically, the government sub-mitted evidence that McCarrell, the Gratzes' accountant, signed title to FIA based on Powell's false representation that FIA was entitled to the vehicles. The jury could further infer that Powell knew FIA was not the owner of the limousines. Based on our review of the record and in light of the superior position of the district court to consider the evidence, we accept the district court's well-reasoned and considered analy-sis.

Where "the evidence supports different, reasonable inter-pretations," it is the jury's task to determine which interpreta-tion is correct. *United States v. Lentz*, 383 F.3d 191, 199 (4th Cir. 2004) (quoting *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997)) (internal quotation marks omitted). Because the evidence here permitted multiple readings, the district court was well within the bounds of its discretion to decline to give Powell's instruction and, instead, to permit the jury to ascertain "which interpretation to believe." *Id.*

## B.

Powell urges that, by referring to Pavlock and Powell as "liars" during opening and closing arguments, the prosecutor committed reversible misconduct. In general, to reverse due to a prosecutor's improper remarks, we must find that (1) the remarks were improper and (2) they "so prejudiced the defendant's substantial rights that the defendant was denied a fair trial." *Lighty*, 616 F.3d at 359. Because Powell failed to object to these comments before the district court, however, we review only for plain error. *See United States v. Thomas*, 669 F.3d 421, 424 (4th Cir. 2012); *United States v. Sanchez*, 118 F.3d 192, 197 (4th Cir. 1997).

To secure relief under the plain-error standard, a defendant must show "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Thomas*, 669 F.3d at 424 (alteration in original) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)) (internal quotation marks omitted). Even if he satisfies these conditions, we retain discretion regarding whether to correct the error, and we will "exercise that discretion only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Knight*, 606 F.3d 171, 177–78 (4th Cir. 2010) (quoting *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009)) (internal quotation marks omitted).

We have not determined whether describing a defendant as a "liar" is, per se, improper.[3] But the Second, Seventh, Eighth, and Ninth Circuits have held that the government may refer to a defendant as a liar under some circumstances. *E.g.*,

---

[3]Powell argues that *United States v. Weatherless*, 734 F.2d 179 (4th Cir. 1984), establishes that it is improper for a prosecutor to refer to a defendant as a "liar." The prosecutor in *Weatherless*, however, also used far more inflammatory language. *See id.* at 181 (reporting that the prosecutor said, inter alia, that the defendant was a loser and "a sick man"). Therefore, that case fails to make plain that a prosecutor may never use the term "liar" to describe a defendant.

*United States v. Moreland*, 622 F.3d 1147, 1161–62 (9th Cir. 2010) (allowing where based on reasonable inferences from the evidence); *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002) (permitting as long as not excessive or inflammatory); *United States v. Shoff*, 151 F.3d 889, 893 (8th Cir. 1998) (finding no misconduct as long as the prosecutor is arguing about the evidence); *United States v. Manos*, 848 F.2d 1427, 1437 (7th Cir. 1988) (deducing no undue prejudice from labeling "the teller of [a] falsity a liar"). In light of this authority from our sister circuits, the government's remarks were not clearly improper, and Powell has failed to establish plain error. *Cf. United States v. Strieper*, 666 F.3d 288, 295 (4th Cir. 2012) ("[W]here we have yet to speak directly on a legal issue and other circuits are split, a district court does not commit plain error by following the reasoning of another circuit.").

## C.

Section 3B1.2 of the Sentencing Guidelines provides for various reductions to a defendant's offense level if the defendant "play[ed] a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 & cmt. n.3(A). The defendant bears "the burden of proving, by a preponderance of the evidence, that he is entitled to a mitigating role adjustment in sentencing." *United States v. Pratt*, 239 F.3d 640, 645 (4th Cir. 2001). We review for clear error the district court's determination that Powell failed to show his entitlement to such an adjustment. *See United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006) ("In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo."); *Pratt*, 239 F.3d at 646.

Powell urges that the evidence plainly demonstrates that he was minimally culpable in Pavlock's fraudulent scheme. We have declared, however, that the "critical inquiry" for a sen-

tencing court, in considering a § 3B1.2 adjustment, is "not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *Pratt*, 239 F.3d at 646 (quoting *United States v. Palinkas*, 938 F.2d 456, 460 (4th Cir. 1991)) (internal quotation marks omitted). That is, the sentencing court must measure the defendant's "individual acts and relative culpability against the elements of the offense of conviction," not merely against the criminal enterprise as a whole. *Id.* (quoting *Palinkas*, 938 F.2d at 460) (internal quotation marks omitted).

Regardless of whether Powell may have played only a small role in Pavlock's overall scheme, the district court could reasonably find that as to the offense of conviction—making a false entry in a bankruptcy-related document—his conduct was essential and material. The jury found Powell signed the January 29 letter and submitted it to Fluharty with knowledge that it contained at least one false statement and with intent to obstruct, impede, or influence the bankruptcy. Thus, the district court did not clearly err in rejecting this adjustment.

D.

Finally, Powell claims that his trial counsel was constitutionally ineffective. "Claims of ineffective assistance of counsel are normally raised before the district court via 28 U.S.C. § 2255 and are cognizable on direct appeal only where it conclusively appears on the record that defense counsel did not provide effective representation." *United States v. Allen*, 491 F.3d 178, 191–92 (4th Cir. 2007). Here, we cannot say the record conclusively establishes that the performance of Powell's counsel was deficient or prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, Powell's claim is premature. He may, of course, reassert it through a § 2255 habeas petition.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*