**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-5046**
_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

GERSON GUZMAN MARTINEZ-TURCIO, a/k/a Jerson Martinez,

               Defendant - Appellant.

_____

**No. 10-5189**
_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

MANUEL ANTONIO PACHECO-LICONA, a/k/a Luis Antonio Diaz-Zapata,

               Defendant - Appellant.

_____

**No. 10-5190**
_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

VICTOR BARAHONA,

                    Defendant - Appellant.

                    ─────────────────

                    **No. 10-5250**

                    ─────────────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

RAIMUNDO MARTINEZ-ESPINOZA, a/k/a Reymundo Martinez,

                    Defendant - Appellant.

                    ─────────────────

                    **No. 10-5262**

                    ─────────────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

JAVIER ALEX MARTINEZ-TURCIO, a/k/a Javier Turcios-Martinez,

                    Defendant - Appellant.

                    ─────────────────

                    **No. 10-5291**

                    ─────────────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

2

LUIS GERARDO PACHECO-LICONA,

        Defendant - Appellant.

———————————

Appeals from the United States District Court for the District of South Carolina, at Greenville. Henry F. Floyd, District Judge. (6:10-cr-00054-HFF-8; 6:10-cr-00054-HFF-4; 6:10-cr-00054-HFF-6; 6:10-cr-00054-HFF-7; 6:10-cr-00054-HFF-1; 6:10-cr-00054-HFF-5)

———————————

Submitted: June 19, 2012        Decided: September 17, 2012

———————————

Before TRAXLER, Chief Judge, and WILKINSON and DUNCAN, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Jessica Salvini, SALVINI & BENNETT, LLC, Greenville, South Carolina, for Appellant Gerson Martinez-Turcio; Christopher R. Antley, DEVLIN & PARKINSON, PA, Greenville, South Carolina, for Appellant Manuel Antonio Pacheco-Licona; Robert Sneed, ROB SNEED LAW FIRM, LLC, Greenville, South Carolina, for Appellant Victor Barahona; Margaret A. Chamberlain, Greenville, South Carolina, for Appellant Raimundo Martinez-Espinoza; Kenneth C. Gibson, Greenville, South Carolina, for Appellant Javier Alex Martinez-Turcio; Albert Peter Shahid, Jr., SHAHID LAW OFFICE, LLC, Charleston, South Carolina, for Appellant Luis Gerardo Pacheco-Licona. William N. Nettles, United States Attorney, Columbia, South Carolina, Andrew B. Moorman, Sr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2010, nine members of a drug trafficking operation were indicted for conspiracy to distribute marijuana and other related offenses. Six of the participants who were convicted appeal their convictions and sentences on various grounds. Finding no error, we affirm.

I.

In 2009, Special Agent Jay Rajaee, with the Drug Enforcement Administration ("DEA"), began investigating a drug trafficking organization believed to be distributing large amounts of marijuana in and around Greenville, South Carolina. Agent Rajaee first used global positioning system ("GPS") data received from the cellular telephone of a confidential source to locate two residences used by the organization. The DEA then conducted physical surveillance of the two properties, which included mounting a stationary video camera outside of one of the residences (the "main residence"). Upon viewing days of video recorded from the mounted camera, Agent Rajaee noticed that a van arrived at the main residence every few days and parked behind the main residence in a manner that concealed it from street view. Agent Rajaee also noticed that the van's arrival at the main residence always coincided with the arrival of several people. On a subsequent occasion in which the van

4

arrived at the main residence, from a vantage point in the woods behind the residence, Agent Rajaee observed several people form a human chain between the van and the residence and unload multiple sacks from the van into the residence. To confirm his suspicions, Agent Rajaee, on November 4, 2009, purchased half a pound of marijuana from three members of the organization who pled guilty prior to trial. DEA agents later learned that the organization was getting its marijuana from Texas and was capable of distributing large quantities.

On December 7, 2009, Agent Rajaee, along with other DEA agents and the Greenville County Sheriff's Office SWAT team, executed a search warrant at the main residence. The search resulted in numerous arrests and yielded three firearms, $18,250 in cash, and 124.7 pounds of marijuana.

Nine members of the drug trafficking organization were charged with various offenses. Three of the defendants—the defendants who sold the marijuana to Agent Rajaee—pled guilty to certain counts against them and did not proceed to trial. The other six members of the organization charged in the indictment— Gerson Guzman Martinez-Turcio ("Gerson"), Manuel Antonio Pacheco-Licona ("Manuel"), Victor Barahona ("Victor"), Raimundo Martinez-Espinoza ("Raimundo"), Javier Alex Martinez-Turcio ("Javier"), and Luis Gerardo Pacheco-Licona ("Luis")—proceeded to trial, were convicted by a jury, and now appeal their

5

convictions and sentences on various grounds. Each of the defendants in this appeal was convicted of conspiracy to possess with intent to distribute marijuana ("Count 1"), see 21 U.S.C. §§ 841(a)(1), 846; and possession with intent to distribute, and aiding and abetting the distribution of, marijuana ("Count 3"), see 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1). Raimundo was additionally convicted of possession of a firearm in furtherance of a drug trafficking crime, and aiding and abetting the same ("Count 4"), see 18 U.S.C. §§ 2 and 924(c).

## II. Gerson[1]

Gerson's only argument on appeal is that the district court erred in denying his motion for judgment of acquittal as to both of the counts against him. See Fed. R. Crim. P. 29. We review this claim de novo and view the evidence in a light most favorable to the government. See United States v. Midgett, 488 F.3d 288, 297 (4th Cir. 2007).

With regard to the conspiracy conviction, Count 1, Gerson contends that the government did not prove that he

---

[1] For purposes of this appeal, to the extent applicable and unless otherwise specified, each defendant joins in the arguments of his co-defendants pursuant to Federal Rule of Appellate Procedure 28(i). Thus, while we address each claim according to the defendant who raised it, we have, to the extent appropriate, considered all arguments as to all of the co-defendants and have found no reversible error.

6

knowingly agreed to join the conspiracy or that his actions were in furtherance of the conspiracy. However, "[t]o sustain a conspiracy conviction, there need only be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992) (internal quotation marks and alteration omitted). In this case, the government presented evidence that Gerson lived at the main residence and had $5,000 in cash hidden under his bed; that Gerson was present on two occasions when the van arrived at the main residence to unload marijuana; and that Gerson and other co-defendants sold marijuana to the same buyer on multiple occasions. This evidence is sufficient to enable a fact finder to find the "slight connection between the defendant and the conspiracy [that is needed] to support conviction." Id. Therefore, the district court did not err in denying Gerson's motion with respect to Count 1.

With regard to Count 3, Gerson contends that the government did not prove that he possessed marijuana. However, possession may be constructive, and "[c]onstructive possession may be proved by demonstrating that the defendant exercised, or had the power to exercise, dominion and control over the item." United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (en banc) (internal quotation marks omitted). The evidence

7

discussed above supporting Gerson's conviction on Count 1 would enable a reasonable fact finder to convict Gerson on Count 3 as well. Therefore, the district court did not err in denying Gerson's motion with respect to Count 3.

## III. Manuel

Like Gerson, Manuel challenges the district court's denial of his motion for judgment of acquittal as to Counts 1 and 3. Manuel also challenges three aspects of his sentence. We begin by addressing the district court's denial of his acquittal motion.

### A.

As to Manuel's conviction on Count 1, government witnesses testified that Manuel was found within the main residence during the execution of the search warrant and that he was spotted at the organization's other residence on two occasions. On one such occasion, Manuel was seen interacting with three of the other co-defendants. On the other occasion, Manuel was seen with a group of others entering that residence carrying pillows and blankets shortly after the van unloaded marijuana at the main residence. From this latter evidence, the jury could infer, as the government suggests, that the other residence was used as a safe house where members of the

8

organization could rest after transporting marijuana. Finally, the government presented evidence from which the jury could infer that Manuel traveled in the van to the main residence with marijuana on one occasion. Given this collective evidence, a reasonable fact finder could convict Manuel on Count 1. See United States v. Cloud, 680 F.3d 396, 408 (4th Cir. 2012) ("In reviewing [this claim], we must affirm a guilty verdict that . . . is supported by substantial evidence," which "is defined as evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." (internal citation and quotation marks omitted)).

With regard to Count 3, the same evidence supporting Manuel's conviction for Count 1 supports his conviction for Count 3. Under a constructive possession theory, a reasonable fact finder could convict Manuel on Count 3. Therefore, the district court did not err in denying Manuel's acquittal motion as to Counts 1 and 3.

B.

Turning to Manuel's sentencing challenges, we first address his claim that the district court erred in attributing at least 400 kilograms but less than 700 kilograms of marijuana to him for sentencing purposes. We review this claim for clear

9

error.  See United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011).  At sentencing, the government presented evidence that the organization delivered approximately 100 pounds of marijuana to its customers every three days, that Manuel participated in the conspiracy for 42 days, and that approximately 14 deliveries were, therefore, made during his involvement in the conspiracy. From this evidence, the district court attributed 1,400 pounds of marijuana to Manuel, which equates to approximately 635 kilograms of marijuana.  Thus, the district court did not commit clear error in calculating the drug quantity attributable to Manuel at sentencing.  See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999) ("A district court's approximation of the amount of drugs is not clearly erroneous if supported by competent evidence in the record.").

## C.

Manuel also challenges the district court's application of a firearm enhancement, which we review for clear error.  See Slade, 631 F.3d at 188.  Section 2D1.1(b)(1) of the Sentencing Guidelines permits a district court to increase a sentence by two levels "[i]f a dangerous weapon (including a firearm) was possessed."  In this case, two handguns were found in the main residence in a bedroom that was adjacent to a study, where over 120 pounds of marijuana were found.  Thus, the

10

district court's application of the firearm enhancement was not clear error. See United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997) ("[T]he proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under Section 2D1.1(b)(1)."); U.S.S.G. § 2D1.1(b)(1) cmt. n.3 ("The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.").

D.

Finally, Manuel challenges the district court's refusal to apply a mitigating role adjustment, which we review for clear error. See United States v. Powell, 680 F.3d 350, 359 (4th Cir. 2012). Pursuant to § 3B1.2 of the Sentencing Guidelines, a district court may decrease a defendant's offense level upon finding that the defendant played a minor or minimal role in the offense. In light of the evidence previously discussed, we find Manuel's role to be "material or essential to committing the offense[s]," United States v. Akinkoye, 185 F.3d 192, 202 (4th Cir. 1999) (internal quotation marks omitted), and conclude that the district court did not clearly err in refusing to apply the adjustment.

11

IV. Victor

Victor raises four arguments on appeal, three challenging his conviction and one challenging his sentence. We address these claims seriatim.

A.

Victor first argues that the district court erred by denying his motion for judgment of acquittal as to the conspiracy conviction, Count 1. We disagree. At trial, government witnesses placed Victor at the organization's main residence and at its other residence on several occasions interacting with other co-defendants. Victor was also found within the main residence when law enforcement executed the search warrant. Once seen by law enforcement, he fled within the residence, physically resisted arrest, and had to be subdued with a Taser. From this evidence, the jury could infer a guilty state of mind. See United States v. Obi, 239 F.3d 662, 665 (4th Cir. 2001). A government witness additionally testified that Victor was found in a bedroom of the main residence lying on the floor with his hands next to a mattress where a revolver was later found, showing his apparent knowledge of the location of firearms in the main residence. With this collective evidence, a reasonable juror could convict Victor on Count 1.

12

B.

Victor's second argument is that the district court erred in admitting testimony of Jose Quinones, a DEA informant. We review this claim for abuse of discretion. See United States v. Blevins, 960 F.2d 1252, 1255-56 (4th Cir. 1992). At trial, over a defense objection, Mr. Quinones testified that in 2008, Fernando Cruz-Carrasco, an unindicted co-conspirator, and Javier, a co-defendant in this appeal, both independently told him that their drug trafficking organization was capable of transporting 1-3 tons of marijuana from the Mexican border in Texas to Greenville, South Carolina. The district court admitted this testimony under Federal Rule of Evidence 801(d)(2)(E), which excepts from the hearsay rule statements "offered against an opposing party" that are "made by the party's coconspirator during and in furtherance of the conspiracy." On appeal, Victor contends that the district court erred in admitting this testimony because Victor was not a member of the conspiracy at the time the statements were made and because the DEA informant was not a co-conspirator himself. As to the former contention, it is of no import that Victor may not have joined the conspiracy at the time the statements were made because "upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant." United States v. Jackson,

13

757 F.2d 1486, 1490 (4th Cir. 1985). As to the latter contention, Rule 801(d)(2)(E) does not require that the witness be a co-conspirator; it only requires that the declarant be a co-conspirator. See United States v. Ayala, 601 F.3d 256, 268 (4th Cir. 2010) ("[T]hat a comment was made to . . . a government informant does not, without more, render it inadmissible under Rule 801(d)(2)(E)."). Thus, the district court did not abuse its discretion in admitting Mr. Quinones' testimony.

## C.

Victor's third argument, which he raises for the first time on appeal, is that the district court constructively amended the indictment by instructing the jury on Count 3 in the disjunctive—possession with intent to distribute or aiding and abetting—because the indictment charged Count 3 in the conjunctive—possession with intent to distribute and aiding and abetting. However, in this circumstance, "an indictment may be phrased in the conjunctive, when the . . . jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment." United States v. Farish, 535 F.3d 815, 823 (8th Cir. 2008) (internal quotation marks omitted); cf. United States v. Perry, 560 F.3d 246, 256 (4th Cir. 2009) ("[W]hen the Government charges in the conjunctive, and the

14

statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive."); United States v. Wills, 346 F.3d 476, 495 (4th Cir. 2003) (explaining that aiding and abetting is not an essential element of an offense and need not even be charged in an indictment). Therefore, the district court's jury instruction did not amount to plain error. See United States v. Olano, 507 U.S. 725, 732 (1993).

D.

Victor's final argument is that the district court committed procedural error at sentencing, a claim we review "under a deferential abuse-of-discretion standard." United States v. King, 673 F.3d 274, 283 (4th Cir. 2012). Victor contends that the district court failed to provide an individualized explanation of its sentence and failed to recognize the proper burdens of proof when applying a firearm enhancement and when refusing to apply a mitigating role adjustment. At sentencing, however, the district court adopted Victor's presentence report "for purposes of supporting the [18 U.S.C. §] 3553(a) facts," J.A. 748, listened to the parties' arguments about application of the § 3553(a) factors, and directly addressed Victor's arguments about sentence enhancements and adjustments. Thus, having reviewed the record,

15

we are satisfied that the district court committed no procedural error at sentencing.

## V. Raimundo

Raimundo raises two arguments on appeal. Both arguments relate to his conviction.

### A.

His first contention, which he raises for the first time on appeal, concerns the GPS tracker that the DEA placed on the underside of the van used by the organization to transport marijuana. From this GPS tracker, the DEA learned that members of the organization were traveling between Houston, Texas, and Greenville, South Carolina, every three to five days. At trial, the district court permitted the government to introduce data from the GPS tracker and to testify about that data. On appeal, Raimundo contends that the district court erred in admitting this evidence because the government failed to lay a proper foundation, see Fed R. Evid. 901, by failing to specify who placed the device, when the device was placed, and upon which vehicle the device was placed.[2] At trial, however, two DEA

---

[2] Raimundo does not contend that the government's installation of the tracking device or its use to monitor the (Continued)

16

agents testified that the tracker was placed by DEA agents on "a white cargo van with ladders" parked at the main residence. J.A. 280.  An employee of the manufacturer of the tracking device provided testimony showing further that the device was placed some time within a one-month window in late 2009.  Given this authentication, we conclude that the district court did not plainly err, see Olano, 507 U.S. at 732, in admitting this data and related testimony.

B.

Raimundo's second challenge on appeal is to the district court's denial of his motion for judgment of acquittal as to Count 4, possession of a firearm in furtherance of a drug trafficking crime.  He challenges only the jury's finding that he possessed a firearm; he does not challenge whether any of the firearms found were used in furtherance of the drug conspiracy. In this case, Raimundo lived in the main residence, and a firearm was found in the bedroom in which Raimundo stayed. Therefore, under a constructive possession theory, see Burgos, 94 F.3d at 873, a reasonable finder of fact could find Raimundo guilty as to Count 4.  Cf. United States v. Shorter, 328 F.3d

---

van's movements constituted an invalid search under the Fourth Amendment.

167, 172 (4th Cir. 2003) ("[T]he fact that the firearms . . . were found in [a defendant's] home permits an inference of constructive possession."); United States v. Alanis, 265 F.3d 576, 592 (7th Cir. 2001) ("When a gun is found in a defendant's bedroom, as here, it would not be improper for the jury to infer that [the defendant] had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom . . . ." (internal quotation marks omitted)).

## VI. Javier

Javier raises three claims on appeal, two of which relate to his conviction and one of which relates to his sentence.

### A.

His first challenge is to the district court's denial of his motion to suppress. "[W]e review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Farrior, 535 F.3d 210, 217 (4th Cir. 2008). Trooper Scott Cash, of the Virginia State Police, testified that he pulled over a Chevy Avalanche driven by Javier because of three separate traffic violations. The trooper approached the vehicle, asked for Javier's license and

18

registration, and noticed several things about Javier's demeanor: "he was extremely nervous[,] . . . his hands were shaking, his body was shaking, his chest was rapidly increasing[,] . . . [and w]hile talking to him he always looked back towards the two passengers in the rear [of the vehicle] looking for guidance in answers to the questions." J.A. 91. When the front passenger opened the glove compartment to retrieve the registration, Trooper Cash noticed within that compartment a large amount of U.S. currency bundled up in rubber bands. During this exchange, Trooper Cash also noticed that the vehicle had a single key in the ignition and that three air fresheners were visible in the vehicle, one of which was located in the glove compartment on top of the cash. Trooper Cash believed the air freshener in the glove compartment was meant to mask drug odors on the cash. When the front passenger saw that the cash was visible, he quickly scooped it out of the glove compartment with his hand and threw it on the floorboard of the vehicle.

After Trooper Cash checked the license and registration in his patrol car, he returned to the Avalanche and asked Javier to exit the vehicle and come back to the patrol car parked behind the Avalanche. Javier complied and sat in the front passenger seat of the patrol car. In response to an inquiry about the cash in the glove compartment, Javier stated

19

that he worked in construction and that the money belonged to his boss. Trooper Cash, however, noted that Javier's "hands were extremely soft," which was inconsistent, in Cash's experience, with the hands of a construction worker. J.A. 98. Trooper Cash explained to Javier that he was receiving a verbal warning and told him he was free to leave. When Javier opened the patrol car door and placed both feet on the ground, Trooper Cash asked Javier if he would mind speaking with him further. Javier agreed to speak further with Trooper Cash, placing his left foot back in the vehicle but leaving the door ajar. Trooper Cash then asked a variety of questions using a Spanish language guide, which contained Spanish and English versions of various questions. Using this guide, Trooper Cash would read a question aloud in English and Javier would then read the Spanish translation to himself and respond to the question aloud in English. One question posed in this fashion was "'May I search your vehicle,'" to which Javier responded "'Yeah.'" J.A. 102. Trooper Cash then searched the Avalanche with the aid of other state troopers who had since arrived on the scene. In the rear of the vehicle, they found $55,642 in U.S. currency hidden within a box of detergent.

Javier does not challenge the initial traffic stop, but he does contend that Trooper Cash unlawfully prolonged the traffic stop and that his consent to the search was not

20

voluntary.  These contentions are without merit.  "If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion" of other criminal activity, United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011), a showing of which must include "specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot," United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008) (internal quotation marks omitted).  Here, Javier's demeanor, combined with the cash in the glove compartment, the passenger's attempt to hide the cash, the placement of the air fresheners, the single key in the ignition, and the perceived lie about the source of the money amounted to reasonable suspicion.  Thus, assuming without deciding that the conversation following termination of the traffic stop was not a consensual one, Trooper Cash had reasonable suspicion that criminal activity was afoot, so his continued investigation was not unlawful.

With regard to the voluntariness of Javier's consent to have the Avalanche searched, we consider the totality of the circumstances to determine if the district court's factual findings were clearly erroneous.  See United States v. Gordon, 895 F.2d 932, 938 (4th Cir. 1990).  In contending that his

21

consent was involuntary, Javier argues that he did not understand his rights and that the environment was coercive. The former argument does not help Javier because Trooper Cash never suggested that Javier was required to consent to the search and, in any event, "the government need not demonstrate that the defendant knew of the right to refuse to consent for the search to be deemed a voluntary one." Id. As to the latter argument concerning coercion, Trooper Cash sought Javier's consent in Javier's first language of Spanish, knowing that Javier might understand that language better, and Javier unequivocally gave his consent. The door to the patrol car's passenger seat, where Javier was sitting, was ajar at the time. And the additional troopers at the scene did not exit their vehicles until after Javier gave his consent. Given these facts, we find that the district court did not clearly err in deeming the consent voluntary. Therefore, the district court did not err in admitting the money seized from this traffic stop.

B.

Javier's second argument on appeal is that the district court erred in admitting evidence of drug activity in Virginia. Because Count 1 of the indictment restricts the geographic scope of the charges in that count to "the District

22

of South Carolina," J.A. 18, and does not include the language "and elsewhere," Javier contends that evidence of conduct outside of South Carolina is inadmissible because it would be irrelevant under Federal Rule of Evidence 402. We disagree. The evidence at issue revealed a conspiracy to distribute marijuana in the Virginia area between several people, and this evidence made the existence of a conspiracy between some of the same persons in South Carolina "more . . . probable than it would be without the evidence." Fed. R. Evid. 401(a). The facts revealed through this testimony were also "of consequence," Fed. R. Evid. 401(b), because their "existence . . . provide[d] the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998), overruled on other grounds by Hooks v. Ward, 184 F.3d 1206 (10th Cir. 1999). Therefore, the evidence was relevant and admissible.

## C.

Finally, Javier challenges the substantive reasonableness of his sentence, arguing that the district court erred by considering opportunities for rehabilitation. At sentencing, the district court adopted the government's § 3553(a) analysis, in which the government stated that certain

23

sentences "would provide [Javier] with much needed educational and vocational rehabilitation."  J.A. 819.  In light of the Supreme Court's recent pronouncement that 18 U.S.C. § 3582(a) "precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation," Tapia v. United States, 131 S. Ct. 2382, 2385 (2011), Javier contends that the district court's alleged consideration of rehabilitation requires resentencing.  We disagree.

As the Court explained in Tapia, a sentencing court may consider and discuss "the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs," but the "court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."  Id. at 2392-93.  The government's statement—a clear reference to § 3553(a)(2)(D), which requires consideration of "needed educational or vocational training"—was little more than an acknowledgment of the services that might be beneficial to Javier while incarcerated, and we find nothing in the record indicating that the district court imposed the sentence or lengthened the sentence term for the purpose of furthering some rehabilitative goal.  Thus, there was no Tapia error.  See United States v. Tolbert, 668 F.3d 798, 803 (6th Cir. 2012) (finding no Tapia error where district court suggested defendant could benefit

24

from mental health treatment but otherwise relied on § 3553(a) factors and "failed to make the kind of statements that were made by the district court in Tapia").

## VII. Luis

Like Javier, Luis raises three claims on appeal, two pertaining to his conviction and one pertaining to his sentence.

### A.

His first argument is that the district court erred in denying his motion for judgment of acquittal as to Count 1, the conspiracy Count. He focuses his argument on the quantity of marijuana for which he was convicted, contending that the government did not prove a drug conspiracy involving 1000 kilograms or more. As before, we review this claim de novo and view the evidence in a light favorable to the government. See Midgett, 488 F.3d at 297. The government contends that Luis did not raise this specific objection at trial, in which case we would review for plain error. See Olano, 507 U.S. at 732. Assuming, but without deciding, that Luis preserved this objection, we find that a reasonable finder of fact could have convicted Luis on Count 1. Based on the testimony of one government witness alone, the government presented evidence that Luis, along with at least one other co-conspirator, actually

25

sold in excess of 1,000 kilograms of marijuana. This evidence is sufficient to convict Luis on Count 1. Additionally, the government presented evidence that Luis claimed to live at the main residence, he was present on the day of the search of the main residence, and his car was seen at both the main residence and the other residence. Thus, the evidence was more than sufficient to convict Luis on Count 1, and the district court, therefore, did not err in denying his acquittal motion.

B.

Luis also challenges the search of the van, contending that the placement of the GPS tracker on the van and its use to monitor the vehicle's movements ran afoul of the Fourth Amendment. He raises this argument in the reply brief only. Because Victor is the only other co-defendant who joined Luis in filing a reply brief, we consider this argument as to Luis and Victor only.[3] In advancing the argument, Luis directs us to the Supreme Court's recent conclusion that the installation of such a device and its use to monitor vehicular movement constitutes a

---

[3] Although each defendant joined in the arguments of his co-defendants set forth in the opening brief, the failure on the part of the co-defendants other than Luis and Victor to file a reply brief, much less sign on to the arguments made therein, precludes our consideration of this claim as to those defendants.

search.  See United States v. Jones, 132 S. Ct. 945, 949 (2012). Luis, however, acknowledges that the van did not belong to him and fails to direct the court to any place in the record suggesting that he had some legitimate expectation of privacy in the van.  He, therefore, has no privacy interest in the van and lacks standing to challenge the search.  See United States v. Carter, 300 F.3d 415, 421 (4th Cir. 2002) (per curiam) ("A [person who is not operating] a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest . . . .").[4]

## C.

Finally, Luis argues that the district court erred in calculating the drug quantity at sentencing.  The evidence that is sufficient to support Luis's conviction for possession with intent to distribute over 1,000 kilograms of marijuana is likewise sufficient to support the district court's drug weight calculation at sentencing.  We therefore find no clear error on the part of the district court.  See United States v. Cabrera-

---

[4] Like Luis, Victor does not contend that he owned the van nor does he direct the court to any legitimate expectation of privacy that he has in the van.  Therefore, we conclude that he, like Luis, lacks standing to challenge the search of the van.

Beltran, 660 F.3d 742, 756 (4th Cir. 2011); Randall, 171 F.3d at 210.

## VIII.

For the foregoing reasons, the defendants' convictions and sentences are affirmed.

AFFIRMED