**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 14-4868

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ABDULMALIK ABDULLA,

Defendant - Appellant.

_____

No. 14-4877

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

AHMED MOHSSEN,

Defendant - Appellant.

_____

Appeals from the United States District Court for the District
of Maryland, at Baltimore.  Richard D. Bennett, District Judge.
(1:14-cr-00050-RDB-1; 1:14-cr-00050-RDB-2)

_____

Submitted:  November 30, 2015      Decided:  December 3, 2015

_____

Before WILKINSON and GREGORY, Circuit Judges, and HAMILTON,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

---

Gerald C. Ruter, LAW OFFICES OF GERALD C. RUTER, P.C., Towson, Maryland, Warren E. Gorman, Rockville, Maryland, for Appellants. Rod J. Rosenstein, United States Attorney, David I. Sharfstein, Leo J. Wise, Assistant United States Attorneys, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Abdulmalik Abdulla and Ahmed Mohssen appeal their convictions and respective 48-month sentences for four counts of food stamp fraud, in violation of 7 U.S.C.A. § 2024(b)(1) (West Supp. 2015), and seven counts of wire fraud, in violation of 18 U.S.C. § 1343 (2012). They argue that the district court erred in striking a juror for cause, determining that each Defendant was responsible for over $1 million in losses, and rejecting Mohssen's request for a minor or minimal role adjustment. Finding no error, we affirm.

The Defendants contend that they were denied due process under the Fifth Amendment when the district court struck Prospective Juror Number 58 (Juror 58) for cause. During voir dire follow up questioning, Juror 58 stated that she believed that food stamp fraud was an everyday and common occurrence in the Baltimore area. However, Juror 58 also answered that she could be a fair and impartial juror. Defendants contend that the strike created a jury that was biased in violation of the Sixth Amendment because Juror 58 was excused for allegedly invalid reasons. Defendants argue that because Juror 58 stated that she had not personally seen food stamps traded for cash, she was not closely familiar with anyone who had, and she could be a fair and impartial juror, the court abused its discretion in striking her for cause.

We review a district court's determination whether to remove a juror for cause for an abuse of discretion. United States v. Hager, 721 F.3d 167, 190 (4th Cir. 2013). "It is well-settled, of course, that an accused is entitled under the Sixth Amendment to trial by a jury composed of those who will adhere to the law and fairly judge the evidence." United States v. Smith, 451 F.3d 209, 219 (4th Cir. 2006). The trial judge "is best situated to determine competency to serve impartially." Patton v. Yount, 467 U.S. 1025, 1039 (1984); see United States v. Cabrera-Beltran, 660 F.3d 742, 749 (4th Cir. 2011). Thus, the trial judge possesses "very broad discretion in deciding whether to excuse a juror for cause." Cabrera-Beltran, 660 F.3d at 749.

This court will recognize an abuse of such discretion and will reverse "if the court demonstrates a clear disregard for the 'actual bias' of an individual venireman." United States v. Turner, 389 F.3d 111, 115 (4th Cir. 2004). The appellate court's role is to determine whether "'the trial judge [was] very careful to see that the jury obtained is fair and impartial,'" and permitted "sufficient information to come forward so that he could exercise his discretion in an informed way." Id. at 118 (quoting Neal v. United States, 22 F.2d 52, 53 (4th Cir. 1927)). To this end, the court "is bound either to make or to permit such inquiries to be made as will enable him

4

in the exercise of his discretion to exclude from the jury persons who have formed fixed opinions about the case and are not fair and impartial jurors within the contemplation of the law." Neal, 22 F.2d at 53.

While the Defendants' observations are not wholly lacking in merit, they do not entitle them to relief. The court considered that the juror's response could cut against the Government or the defense. Because the juror stated that trading food stamps for cash is an everyday occurrence and that it happens all the time, she could presume that the facts alleged were true based on her perception that food stamp fraud is rampant in Baltimore. Juror 58's statements were based on her outside sources rather than any evidence received during trial. The strike could have preserved the Defendants' due process rights because Juror 58's statements could easily have led her to believe that the allegations must be true since such acts are so frequently done in Baltimore. On the other hand, the court was also concerned that Juror 58's knowledge of the widespread food stamp fraud may have caused her to be less likely to convict because food stamp fraud is an everyday occurrence and potentially not deserving of criminal prosecution despite the statutory requirement.

The district court's decision to strike Juror 58 for cause was not an abuse of its wide discretion. Although the juror

5

stated that she could be fair and impartial, there was a real possibility of partiality based on her preconceived impression and opinion. Further, although the Defendants complain that the court violated their due process rights, their counsel did not take the opportunity to question Juror 58. The trial judge is in the best position to evaluate a potential juror's impartiality and credibility based on the juror's answers to questions presented. Cabrera-Beltran, 660 F.3d at 749. We have reviewed the record and find that the court did not abuse its discretion.

Next, the Defendants contend that the district court erred in determining the amount of loss at sentencing at nearly $1.2 million. They contend that the cost of goods determined by expert witness David Rutledge should be reduced because "several items" were left out of the calculation; they, however, do not identify these items. An increase in the cost of goods sold would reduce the amount of the fraudulent funds received. The Defendants also do not address the district court's determination that the reduction that they sought would require a finding of a 39 percent addition in the cost of goods sold—also unsupported by the trial evidence or any materials in their sentencing memoranda.

Mohssen also argued that he should be held responsible for less than the $1,185,583 loss amount because there were some

"missing invoices"—again with no further specific information—that would increase the cost of goods. Mohssen further contends that he should only be responsible for the funds deposited in the Wells Fargo account because he was not a signor on the M&T account.[1]

In assessing a challenge to the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Alvarado Perez, 609 F.3d 609, 612 (4th Cir. 2010). The amount of loss for sentencing purposes "is the greater of actual loss or intended loss." U.S. Sentencing Guidelines Manual § 2B1.1(b)(1), cmt. n.3(A) (2013). When calculating the loss attributable to a defendant, a district court "need only make a reasonable estimate of the loss, given the available information." United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003). Here, the cost of goods and loss calculation methodologies were thoroughly explained by FBI Forensic Accountant, and expert witness, David

---

[1] Defendants also briefly alternatively argue that they should only be held responsible for the amounts specified in the counts in the superseding indictment (resulting in an offense level of 7 for $772.04), or that they should split the amount deposited in the Wells Fargo because they were each a signor, instead of both being responsible for the full amount. For the reasons stated below, the district court did not err in determining the loss to be over $1,183,000 for each Defendant.

Rutledge, and U.S. Department of Agriculture Special Agent Stanley Wojtkonski. These witnesses adequately supported their reasoning. Moreover, the Defendants did not point to specific items that would have changed the cost of goods sold and subsequently the total estimated loss related to the food stamp fraud. We therefore conclude that the district court appropriately determined that the estimated loss from the Defendants' scheme was over $1 million and did not clearly err in determining the loss amount.

The court also did not err in rejecting Mohssen's request to split the loss between the Defendants. Members of a conspiracy or scheme to defraud can be held responsible at sentencing for the entire foreseeable loss caused by the conspiracy or scheme. See United States v. Bolden, 325 F.3d 471, 498 (4th Cir. 2003) ("In calculating fraud loss, a sentencing court must first apply the principles of relevant conduct.") (internal quotation marks omitted); United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) ("one participant in a multi-participant . . . conspiracy may be held accountable, for sentencing purposes, for a greater or lesser [amount] than other coparticipants"). "[T]he fraud loss properly attributable to a defendant[] must be determined on the basis of (1) the acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by a defendant; and

8

(2) in the case of a jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Bolden, 325 F.3d at 499; see USSG § 1B1.3(a)(1)(B).

There was testimony at trial by three witnesses that the Defendants jointly operated Sam's, thus the Defendants quite clearly participated in "jointly undertaken criminal activity." The court did not clearly err in determining that the same loss amount should apply to both Defendants.

Finally, Mohssen argues that the district court erred in determining that he did not play a minor or minimal role in the fraud. See USSG § 3B1.2. Mohssen contends that he was entitled to the offense level reduction because he was not an owner or supervisor of Sam's, was not listed as an owner on the property bill of sale, was not a signor on the M&T account, only received a disbursement of $23,592.50 to his personal bank account, and did not sign or submit the application to become a food stamp retailer.

A district court's determination regarding a defendant's role in the offense is reviewed for clear error. United States v. Powell, 680 F.3d 350, 358-59 (4th Cir. 2012). To establish eligibility for a reduced offense level under § 3B1.2, "[t]he defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a mitigating role

adjustment in sentencing." Powell, 680 F.3d at 358-59 (internal quotation marks omitted). The court examines "whether the defendant's conduct is material or essential to committing the offense." United States v. Akinkoye, 185 F.3d 192, 202 (4th Cir. 1999) (internal quotation marks omitted).

Mohssen was certainly more than a minor or minimal participant in the food stamp fraud scheme. His girlfriend and other witnesses testified that Mohssen ran the store approximately half of the time. Mohssen's girlfriend also testified that Mohssen told her that he and Abdulla were co-owners of Sam's. Further, although Mohssen attempts to characterize his financial benefit from the scheme as minimal because he only had approximately $23,000 disbursed to his personal checking account, he used the Wells Fargo Sam's account as "his own personal piggybank" and withdrew funds regularly. He also recruited at least one food stamp participant to sell his benefits for cash. These are not circumstances signifying decreased culpability. We therefore conclude that the district court did not clearly err in determining that Mohssen was not entitled to the role in the offense reduction.[2]

---

[2] Defendants briefly argue that their 48-month sentences are substantively unreasonable in consideration of 18 U.S.C. § 3553(a)(2) (2012) because there is no need for deterrence as they are subject to deportation after they have served their sentences. They also claim that their sentences are (Continued)

Accordingly, we affirm the judgments. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

---

substantively unreasonable, without any specific supporting argument. As the Defendants' sentences are within the properly calculated Guidelines range and they have not rebutted the presumption that their sentences are reasonable balanced against the 18 U.S.C. § 3553(a) (2012) factors, we conclude the court did not abuse its discretion in imposing the sentences. See United States v. Louthian, 756 F.3d 295, 306 (4th Cir.) (citation omitted) ("[A]ny sentence that is within or below a properly calculated Guidelines range is presumptively [substantively] reasonable. Such a presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors."), cert. denied, 135 S. Ct. 421 (2014).